[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16451
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00217-HLA-JRK-1

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

RONALD WALKER,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 20, 2014)

Before TJOFLAT, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Ronald Walker and twelve others were indicted for conspiring, in violation of 21 U.S.C. § 846, to manufacture 50 or more grams of methamphetamine between late 2006 through mid-2011, in violation of 21 U.S.C. § 841(a)(1). All pled guilty to the charge except Walker, who stood trial.[1] Six of the defendants testified as prosecution witnesses against Walker, and the jury found him guilty as charged. The District Court thereafter sentenced Walker to a prison term of 300 months. He appeals his conviction and sentence. We affirm.

I.

We begin our review by considering Walker's challenge to his conviction. He contends that the District Court should have granted his motion for judgment of acquittal or awarded him a new trial on the ground that a material variance occurred between the charge in the indictment and the proof at trial—that is, the Government's proof established multiple conspiracies instead of the single conspiracy alleged in the indictment. Here is what the proof—in particular the testimony of Walker's codefendants—established.

Walker lived on Bullrush Court in Clay County, Florida, with his girlfriend, Danielle Lutz, and their small child. Sometime in 2006, Walker acquired a bar

---

[1] One defendant who pled guilty, Shaun Fernandez, appealed his sentence. We affirmed. *United States v. Fernandez*, 515 F.App'x 796 (11th Cir. 2013).

2

near his residence; he named it Katt's Hideaway.[2]  He also learned how to make methamphetamine ("meth"), by using the red phosphorous from the strike plates on matchbooks and pseudoephedrine ("pills") bought from a drug store.[3]  Soon, many of the bar's customers began bringing him these precursors, and he turned them into meth.  For every box of pills a customer provided, Walker gave the customer a half-gram of meth and sold what was left.

Walker usually cooked the meth in a shed adjacent to his residence or in a camper kept near the bar.  The defendants who plead guilty described Walker's operation.

Eva Bujno, at times a bartender, became friends with Walker before he opened Katt's Hideaway; both were heavy drug users.  He taught her how to make meth.  Between February 2, 2007, and March 2, 2011, she purchased 288 pills.[4]  All were used by Walker to cook meth.  Jenifer Wilson, a bartender and an eight-year meth addict, bought pills for Walker to cook into meth from sometime in 2006 through 2009.  In all, she purchased and gave to Walker or one of his bartenders 5,068 pills.  Thomas Warner, a pipefitter and drug addict, was hooked on crack from 2004 to 2008; then he switched to meth.  Between July 23, 2009, and July 30,

---

[2]  Walker sold the bar in January 2010.
[3]  Walker also used pills that were the functional equivalent of pseudoephedrine.  For ease of discussion, we refer to pseudoephedrine and the equivalent to "pills."
[4]  The Government introduced into evidence the records maintained by the pharmacies that sold pills to Walker and his codefendants, which showed the quantity of pills purchased.

2010, he provided Walker with 960 pills and received meth in return.  After Walker's bar closed, he moved in with codefendant Shaun Fernandez.

Lucy Dasher was a bartender at Katt's Hideaway in 2009.   She had become acquainted with Walker before that.  Between November 14, 2008, and February 21, 2011, she bought 2,292 pills and gave them to Walker.  In exchange for a box of Sudafed, a box of pills, and two bottles of iodine, Walker would give her a gram of meth.  William Foster, a meth addict, bought 2,038 pills between November 12, 2008, and April 13, 2012.  He frequented Katt's Hideaway once a week and would get high there with Walker.  He provided Walker with pills on occasion.  He also gave Cindy Kirkland pills, and she turned them over to Walker.

Danielle Lutz was the last codefendant to testify.  She came to Florida in December 2007 and moved in with Walker shortly thereafter.  She stayed with Walker until her arrest on August 30, 2011.  Between April 14, 2007, and June 3, 2011, Lutz purchased 3,258 pills.  She prepared the pills for cooking by grinding them up in a coffee grinder in her kitchen.  Walker did the cooking.[5]

We review *de novo* a district court's denial of a motion for judgment of acquittal.  *See* Fed. R. Crim. P. 29.  *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).  However, in doing so, we view the totality of the evidence in the

---

[5]  Between February 5, 2007, and August 28, 2011, Walker purchased 4,300 pills.  He cooked those pills and the pills the codefendants and others provided into meth.

4

light most favorable to the Government, drawing all reasonable inferences and credibility choices in favor of the jury's verdict. *Id.* If a reasonable jury could have found the defendant guilty beyond a reasonable doubt, then we will not overturn the jury's determination. *Id.* To the extent that an appellant's argument "depends upon challenges to the credibility of witnesses, the jury has exclusive province over that determination and the court of appeals may not revisit the question." *United States v. Emmanuel*, 565 F.3d 1324, 1334 (11th Cir. 2009) (internal quotation marks omitted).

"A material variance between an indictment and the government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy." *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996). "We will uphold the conviction unless the variance (1) was material and (2) substantially prejudiced the defendant." *Id.* "To determine whether a variance was material, we look at the evidence in the light most favorable to the government and ask whether a reasonable trier of fact could have determined beyond a reasonable doubt that a single conspiracy existed." *United States v. Seher*, 562 F.3d 1344, 1366 (11th Cir. 2009). Three factors in particular are helpful in making this determination: "(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." *Id.* (internal quotation marks omitted).

5

Even when we find a material variance, however, it is still incumbent upon the defendant to demonstrate that his substantial rights were prejudiced by the variance. *United States v. Calderon*, 127 F.3d 1314, 1328 (11th Cir. 1997); *United States v. Jones*, 913 F.2d 1552, 1560 (11th Cir. 1990) ("A variance between allegations and proof is reversible error only when it actually prejudices the defendant."). To demonstrate substantial prejudice, the defendant must show one of two things: (1) that the proof at trial differed so greatly from the charges that he was unfairly surprised and was unable to prepare an adequate defense; or (2) that there were so many defendants and separate conspiracies before the jury that there is a substantial likelihood that the jury transferred proof of one conspiracy to a defendant involved in another conspiracy. *Jones*, 913 F.2d at 1561.

To obtain a conviction under 21 U.S.C. § 846, the Government had to prove beyond a reasonable doubt, even if only by circumstantial evidence, that Walker and one or more of his codefendants conspired to manufacture 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). The Government did not have to show that the conspirators knew all of the details or participated in every aspect of the conspiracy, only that the Walker "knew the essential nature of the conspiracy." *United States v. Garcia*, 405 F.3d 1260, 1269–70 (11th Cir. 2005) (internal quotation marks omitted).

6

The jury was properly instructed on the elements of the conspiracy offense and heard argument from both the Government and Walker regarding multiple conspiracies and the single overarching conspiracy. Its verdict is an implicit finding that the evidence proved the existence of the single charged conspiracy. *See Jones*, 913 F.2d at 1561. The testimony of Walker's codefendants constituted substantial evidence of an overarching conspiracy. *See United States v. Edouard*, 485 F.3d 1324, 1347–48 (11th Cir. 2007). This testimony showed that Walker and his codefendants got together to have Walker—and sometimes a codefendant— manufacture methamphetamine. Therefore, the District Court did not err in denying Walker's motion for judgment of acquittal or abuse its discretion in denying his motion for a new trial. We turn then to Walker's challenges to his sentence.

## II.

### A.

Under 21 U.S.C. § 841(b)(1)(A), a statutory minimum 10-year sentence and a maximum sentence of life imprisonment apply to the manufacture of controlled substances, except in the case of offenders with a prior felony drug conviction, in which case the statutory mandatory minimum sentence is 20 years. 21 U.S.C. § 841(b)(1)(A). For the 20-year statutory minimum to apply based on a prior felony drug conviction, the Government must file before trial an information with

the court that identifies the conviction supporting the enhancement.  21 U.S.C. § 851(a)(1); *see also United States v. Cespedes*, 151 F.3d 1329, 1331 (11th Cir. 1998); *Harris v. United States*, 149 F.3d 1304, 1306–07 (11th Cir. 1998).  Once the information is filed:

> the [district] court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b).  If the defendant denies any allegation contained in the information or claims that any conviction alleged is invalid, he must file a written response to the information.  *Id.* § 851(c)(1). The district court then must "hold a hearing to determine any issues raised by the response which would except the person from increased punishment."  *Id.*  The Government must prove factual issues relating to a prior conviction beyond a reasonable doubt.  *Id.*

We review for clear error a district court's factual findings related to the imposition of sentencing enhancements.  *United States v. Robertson*, 493 F.3d 1322, 1329–30 (11th Cir. 2007).  Clear error review is deferential, but a factual finding "must be supported by substantial evidence."  *Id.* at 1330.

In *Alleyne v. United States*, 570 U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the Supreme Court revisited two of its prior cases: (1) *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which requires

8

that any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt; and (2) *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002), which held that judicial factfinding that increased the applicable statutory mandatory minimum sentence was permissible under the Sixth Amendment. *Alleyne*, 570 U.S. at ___, 133 S.Ct. at 2157-58.  In *Alleyne*, the Supreme Court expressly overturned *Harris* because it was inconsistent with its decision in *Apprendi*, and determined that any facts that increased the applicable statutory mandatory minimum sentence for a crime must be submitted to a jury and found beyond a reasonable doubt.  *Id.* at ___, 133 S. Ct. at 2155.

The *Alleyne* Court stated that its decision did not reach the issue of whether prior convictions must be proved to a jury, and thus left undisturbed its decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).  *See id.* at ___, 133 S. Ct. at 2160 n.1.  The Court held in *Almendarez-Torres* that a prior conviction is not considered an element of a crime, and it does not have to be proven to a jury beyond a reasonable doubt.  *Almendarez-Torres*, 523 U.S. at 246–47, 118 S.Ct. at 1232–33.

Although the Government's fingerprint expert was equipped at the hearing to replicate his earlier comparison of Walker's fingerprints with the fingerprints from the prior conviction identified in the Government's § 851 information, he

provided sufficient evidence for the District Court to conclude, beyond a reasonable doubt, that Walker was the same person identified in the 1988 Missouri felony marijuana possession conviction. *See Robertson*, 493 F.3d at 1330. We thus find no clear error in the District Court's application of the 20-year statutory mandatory minimum sentence provision.

### B.

A defendant's base offense level is determined by his relevant conduct, including, "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken . . . in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The scope of the relevant conduct is not necessarily the same as the scope of the entire conspiracy or the same for every participant. *Id.* § 1B1.3 cmt. n.2.

"To determine the quantity of drugs attributable to a defendant for sentencing purposes, the district court must first make individualized findings concerning the scope of criminal activity undertaken by the defendant." *United States v. Bush,* 28 F.3d 1084, 1087 (11th Cir. 1994). This requires a determination as to "the scope of the specific conduct and objectives embraced by the defendant's agreement" to participate in the scheme. U.S.S.G. § 1B1.3 cmt. n.2. "The court is

then to determine the quantity of drugs reasonably foreseeable in connection with that level of participation." *Bush*, 28 F.3d at 1087. A defendant is

> certainly only accountable for co-conspirator conduct that was reasonably foreseeable and within the scope of the criminal activity that the defendant[s] agreed to undertake. Consequently, although a conspirator may reasonably foresee other criminal acts, he is not accountable for those acts if they were not part of the scope of the criminal activity he agreed to undertake.

*United States v. Westry*, 524 F.3d 1198, 1219 (11th Cir. 2008) (alterations omitted) (citations omitted) (internal quotation marks omitted). At the sentencing hearing, the Government must prove by a preponderance of the evidence any fact to be considered by the court. *United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005).

Walker's involvement in the conspiracy was greater in scope than most of his codefendants; hence, the court did not deny him due process in acceding to the Government's request that it hold him accountable for more methamphetamine than it attributed to his codefendants. *Westry*, 524 F.3d at 1219; *Bush*, 28 F.3d at 1087; U.S.S.G. § 1B1.3 cmt. n.2. Nor did the court deny him due process when it subjected him, but not the others, to an aggravated role enhancement. *Westry*, 524 F.3d at 1219; *Bush*, 28 F.3d at 1087.

## C.

We review a district court's calculation of drug quantity for clear error. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). We will only

find clear error and disturb the district court's quantity approximation if we are left with a "definite and firm conviction that a mistake has been committed." *United States v. Almedina,* 686 F.3d 1312, 1315 (11th Cir. 2012) (internal quotation mark omitted).

In a case where no drugs are actually seized, the court should make a reasonable estimate based on the available facts. *Id.* Sentencing errors are harmless if they do not have a substantial effect on the defendant's sentence. *United States v. Foley*, 508 F.3d 627, 634 (11th Cir. 2007). Where, as here, the defendant challenges the drug quantity upon which the Guidelines range is based, the Government bears the burden of establishing the disputed quantity by a preponderance of the evidence. *See Almedina*, 686 F.3d at 1315. Cases like this one in which no drugs are actually seized present challenges in resolving the disputed quantity. In these cases, the court must approximate the drug quantity. *Id.* at 1315–16. Although the court's approximation may not be "merely speculative," it may properly be a "fair, accurate, and conservative estimate[]" of the quantity based on evidence presented at trial or at the sentencing hearing, or included as undisputed facts in the presentence investigation report. *See United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998). We will only find clear error and disturb the court's quantity approximation if it is left with a "definite and firm conviction that a mistake has been committed." *Almedina*, 686 F.3d at 1315

(quotation mark omitted).  A member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that he agreed to undertake and that are reasonably foreseeable in connection with that activity.  *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993).

Walker is accountable for the meth he manufactured and the meth manufactured by the codefendants he taught to produce the drug, as well as the reasonably foreseeable quantity produced by those he collaborated with during the course of the conspiracy.  *Ismond*, 993 F.2d at 1499.  Combining the total quantity of meth he and his codefendants produced, he was accountable for at least 592 grams.  In sum, the District Court did not err in holding him accountable for more than 500 grams of methamphetamine.

### D.

We review *de novo* a district court's interpretation and application of the Guidelines, and review the factual findings underpinning such application for clear error.  *United States v. Lee*, 427 F.3d 881, 892 (11th Cir. 2005).  "When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing 'sufficient and reliable' evidence to prove the necessary facts by a preponderance of the evidence."  *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013).  "[A]bsent a stipulation or agreement between the parties, an attorney's factual

13

assertions at a sentencing hearing do not constitute evidence that a district court can rely on." *Id.*  Further, the court can rely upon its recollection of the evidence of the trial to make its findings.  *United States v. Hamaker*, 455 F.3d 1316, 1338 (11th Cir. 2006).

The Sentencing Guidelines provide that a two-level enhancement applies "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence."  U.S.S.G. § 2D1.1(b)(2).  The testimony demonstrated that Walker threatened to kill at least one co-conspirator and her daughter for conduct related to the conspiracy, and that he also punched her in the neck for other offense-related conduct.   He also threatened to hurt another co-conspirator if she failed to properly dispose of evidence of his manufacturing activities.  The court thus had before it sufficient evidence of both the use of violence and the threatened use of violence by walker to support its application of the two-level enhancement.  *Washington*, 714 F.3d at 1361; *Hamaker*, 455 F.3d at 1338; U.S.S.G. § 2D1.1(b)(2).

## E.

A defendant is subject to a six-level increase of his offense level if his crime involved manufacturing methamphetamine and "created a substantial risk of harm to the life of a minor."  U.S.S.G. § 2D1.1(b)(13)(D).  The commentary to § 2D1.1

provides certain factors that a court must consider to determine whether the offense created a substantial risk of harm to human life or the environment:

> (i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

> (ii) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.

> (iii) The duration of the offense, or the extent of the manufacturing operation.

> (iv) The location of the laboratory (*e.g.*, whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

*Id.* § 2D1.1 cmt. n.18(B). The testimony demonstrated that Walker manufactured meth in and near his home for years, had pseudoephedrine pills in the kitchen, along with a pill grinder, stored some meth in a desk drawer in the house, left the cooked meth on the stove to dry out and solidify, and caused fires and explosions that threatened destruction of the house. Taken together, his manufacturing and storage of meth in and around his residence created a substantial risk of danger to his minor daughter. U.S.S.G. § 2D1.1(b)(13)(D); *id.* § 2D1.1 cmt. n.18(B). The court did not err in applying the six-level enhancement.

### F.

Under the Sentencing Guidelines, a two-level role enhancement applies if the defendant "was an organizer, leader, manager, or supervisor" of criminal

activity.  U.S.S.G. § 3B1.1(c).  Factors that the court should consider at sentencing when applying this enhancement include: (1) the exercise of decisionmaking authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others.  *Id.* § 3B1.1 cmt. n.4.  Although being a drug supplier does not automatically make a defendant a supervisor, "the assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement."  *United States v. Jiminez*, 224 F.3d 1243, 1251 (11th Cir. 2000) (upholding the enhancement where a coconspirator had to consult with the defendant before agreeing to sell drugs).

Section 3C1.1 of the Sentencing Guidelines provides:

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  Obstruction of justice occurs—and a two-level enhancement applies—when, among other things, a defendant threatens, intimidates, or otherwise unlawfully influences a witness directly or indirectly, or attempts to do so.  *Id.* § 3C1.1 cmt. n.4(a).

16

Walker recruited numerous pseudoephedrine suppliers, taught several codefendants to manufacture meth, established the meth splitting arrangement that existed throughout the conspiracy between the suppliers and the manufacturers, and exerted some control over the suppliers that other manufacturers could use. This evidence supports the court's application of the aggravated role enhancement. *Jiminez*, 224 F.3d at 1251.  The testimony of Walker's threats against a coconspirator while in jail support the related enhancement for obstruction of justice by means of witness intimidation.  U.S.S.G. § 3C1.1; *id.* § 3C1.1 cmt. n.4(a).

## G.

We have observed that "there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).  The court need not state on the record that it has explicitly considered each factor and need not discuss each factor.  *Id.* at 786.  Rather, "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under [*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)]."  *Id.*  We have upheld as substantively reasonable sentences that were appreciably below the statutory maximum.  *United*

*States v. Valnor*, 451 F.3d 744, 751–52 (11th Cir. 2006).  The maximum punishment for possessing more than 500 grams of a substance containing methamphetamine is life imprisonment, and the minimum, after application of the § 851 enhancement, is 20 years' imprisonment.  21 U.S.C. §§ 841(b)(1)(A)(viii), 846, 851(b)(1)(A).

In considering the § 3553(a) factors, the district court should avoid unwarranted sentence disparities among defendants with "similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  For a substantive unreasonableness claim based on a sentencing disparity, we require that the defendant raising the claim be similarly situated to those who received lesser sentences.  *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009).  To be similarly situated, codefendants must have similar backgrounds and criminal histories.  *United States v. Jayyousi*, 657 F.3d 1085, 1117–18 (11th Cir. 2011).  Bare numbers comparing the defendant's sentence to the sentences of other defendants convicted of similar crimes without context is insufficient to establish that the defendant's sentence is substantively unreasonable.  *United States v. Campbell*, 491 F.3d 1306, 1317 (11th Cir. 2007) ("The statistics [the defendant] cites are bare numbers without context and, therefore, do not persuade us that his sentences are unreasonable.").

In his brief on appeal, Walker failed to provide the criminal history categories, Guideline ranges, and applicable mandatory minimum sentences for his codefendants, thus preventing us from accurately determining whether he and his codefendants were similarly situated. *Jayyousi*, 657 F.3d at 1117–18; *Campbell*, 491 F.3d at 1317. Walker's considerable involvement in the conspiracy distinguishes him from his codefendants, however, all of whom pled guilty and six of whom testified at his trial. Accordingly, he failed to demonstrate that his sentence is substantively unreasonable on the ground that it is disparate from the sentences imposed on his codefendants. *Docampo*, 573 F.3d at 1101. The court considered Walker's objections and arguments at sentencing, as well as the sentencing factors of 18 U.S.C. § 3553(a) and the mandatory minimum. His sentence is below both the Guidelines range and the statutory maximum of life in prison, and thus is indicative of its reasonableness. *Valnor*, 451 F.3d at 751–52.

### III.

We find no legal basis for disturbing Walker's conviction or sentence. They are accordingly

AFFIRMED.