[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13846
_____

D. C. Docket No. 6:11-cr-00087-JA-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR ALMEDINA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 13, 2012)

Before DUBINA, Chief Judge, JORDAN and ALARCÓN,[*] Circuit Judges.

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

DUBINA, Chief Judge:

A federal grand jury charged Appellant, Hector Almedina, with conspiracy to import 100 grams or more of heroin from Colombia to the United States, from January 2011 through February 25, 2011, in violation of 21 U.S.C. § 963 (Count One); importation of 100 grams or more of heroin from Colombia to the United States, in violation of 21 U.S.C. § 952(a), *Id.* § 960(b)(2)(A), and 18 U.S.C. § 2 (Count Two); conspiracy to possess with intent to distribute 100 grams or more of heroin, from January 2011 through February 25, 2011, in violation of 21 U.S.C. § 846 (Count Three); and possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a), *Id.* § 841(b)(1)(B)(I), and 18 U.S.C. § 2 (Count Four). A jury found Almedina guilty on each count and found that each charged offense involved at least 100 grams of heroin. After a sentencing hearing, the district court ordered Almedina to serve concurrent 97-month terms of imprisonment, which Almedina now appeals. After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm Almedina's sentence.

## I.

On February 25, 2011, a package containing 485.68 grams of heroin arrived at the Miami International Airport from Medellín, Colombia. Immigration

Customs Enforcement ("ICE") agents performed a controlled delivery of the package to Almedina in Orlando, Florida. After the controlled delivery, agents arrested Almedina and he informed the ICE agents that he expected to be paid $1,000 to receive the package for Victor Salgado ("Salgado"), whom Almedina knew from playing poker. Almedina also told the agents that he received a package from Colombia for Salgado the previous month and that he received $1,300 for accepting it.

With Almedina's assistance, ICE agents carried out a controlled delivery of the package to Salgado. At the conclusion of the delivery, agents arrested Salgado, who stated that he expected to be paid $5,000 to receive the package and deliver it to "people from South America." [PSI ¶ 16.] Salgado also said that he received a package on a previous occasion for which he was paid a little less than $5,000.

At trial, the Government showed that Almedina accepted a package in January 2011 in the same manner as he accepted the February package. Based on this similar conduct, the Government and the United States Probation Officer recommended holding Almedina accountable for the January package. Because Almedina and Salgado were paid similar amounts for the January and February packages, the Government approximated that the same amount of heroin was

3

shipped in each package.  Based on this approximation, the district court found the January package to contain at least 215 grams of heroin, which is less than half the 485.68 grams of heroin contained in the February package.  Thus, the packages together contained 701 grams of heroin.  Therefore, the district court determined that Almedina's total offense level was 30 under the United States Sentencing Guidelines ("U.S.S.G."), which applies to 700 to 999 grams of heroin, *see* U.S.S.G. § 2D1.1(c)(5) (2011), and his criminal history category was I, which provided a Sentencing Guidelines range of 97 to 121 months in prison.  After the court sentenced Almedina to serve 97 months, the lowest term within the guideline range, Almedina perfected this appeal.

## II.

This court "must review [a challenged] sentence under an abuse-of-discretion standard" and, in doing so, "must first ensure that the district court committed no significant procedural error."  *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  A district court procedurally errs if it improperly calculates the sentencing guidelines range, among other things.  *Id.*  This court reviews for clear error the district court's underlying determination of the drug quantity attributable to a defendant.  *United States v. Chavez*, 584 F.3d 1354, 1367 (11th Cir. 2009).

**III.**

Almedina argues that the district court improperly speculated in determining the drug quantity attributable to him. He admitted that he received two packages for Salgado. However, there was no evidence as to what the first package contained; therefore, he argues it was speculative to presume that the first package contained heroin just because the second package contained heroin. He contends that because the street value of heroin was $40,000 to $50,000 and he was paid $1,300 to accept the package, it is plausible that the first package contained no contraband and was simply a dry run. Almedina also contends that it is unlikely that drug dealers would send that amount of contraband to an unknown person without first determining that the person was reliable and trustworthy. Further, even if the first package did contain contraband, there was no evidence as to the type or amount of contraband it might have contained.

In response, the Government contends in its brief that the district court did not merely speculate. Rather, the Government argues the district court correctly calculated the amount of drugs for which Almedina was accountable, because it was unlikely that drug dealers would have paid Almedina $1,300 and Salgado $5,000 for an empty package. The Government contends that the court did not commit clear error in concluding that the first package contained at least 215

5

grams of heroin based on the similarities between the first and second packages. Further, the Government argues that the district court's estimate that the first package contained half of the amount of heroin found in the second package was fair and conservative.

Where a fact pattern gives rise to two reasonable and different constructions, "the factfinder's choice between them cannot be clearly erroneous." *United States v. Izquierdo*, 448 F.3d 1269, 1278 (11th Cir. 2006) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985)). "For a finding to be clearly erroneous, this Court must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (internal quotation marks omitted). The Government bears the burden of establishing drug quantity by a preponderance of the evidence. *United States v. Rodriquez*, 398 F.3d 1291, 1296 (11th Cir. 2005). This burden "requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 622, 113 S. Ct. 2264, 2279 (1993)). The preponderance of the evidence standard is not toothless, however. *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir.

6

1995).  The district court must ensure that the Government carries its burden by presenting reliable and specific evidence.  *Id.*

When the drug amount that is seized does not reflect the scale of the offense, the district court must approximate the drug quantity.  *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996); *see also* U.S.S.G. § 2D1.1 cmt. n.12 (2011).  In making this determination, the court may rely on evidence demonstrating the average frequency and amount of a defendant's drug sales over a given period of time.  *Frazier*, 89 F.3d at 1506.  This determination "may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, [but it] cannot be based on calculations of drug quantities that are merely speculative."  *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998) (per curiam).

In *United States v. Chavez*, officers found in the defendant's house $17,500 in cash and a receipt for the cash purchase of a Chevrolet Tahoe for the amount of $15,179.  584 F.3d at 1366.  The defendant admitted that he participated in the drug conspiracy at issue, and the court found that he was the source of 27.7 grams of methamphetamine.  *Id.*  The district court then inferred that the cash constituted proceeds from methamphetamine trafficking and determined drug quantity by converting the quantity of cash into the quantity of drugs, finding that one pound

7

of methamphetamine was worth $14,000. *Id.* Based on this evidence, this court determined that the district court made a reasonable inference that was not speculative to the point of being clearly erroneous. *Id.* at 1367.

Although *Chavez* is instructive, it is not on point. In *Chavez*, the defendant had a significant amount of cash, $17,500, and no explanation as to where he received that money. Based on the money alone, this court inferred drug quantity. Almedina, on the other hand, was to receive two payments totaling $2,300. While he admitted this money was payment for the receipt of two parcels, the payment received by Almedina alone does not appear to be enough to estimate drug quantity. Unlike the defendant in *Chavez*, who appeared to be selling drugs, Almedina only received a package and, therefore, that same inference and strong link between cash received and drug quantity are not present.

In an unpublished opinion of this court, *United States v. Curry*, 188 F. App'x 863, 876 (11th Cir. 2006) (per curiam),[1] we held that the district court did not clearly err where it estimated drug quantity based on the seizure of one of four packages sent to the defendant. The packages were all sent from the same source, were labeled similarly, and weighed approximately the same amount. *Id.* at

---

[1] In this circuit, "unpublished opinions are not binding precedent but they may be cited as persuasive authority." *See* 11TH CIR. R. 36-2; *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004).

8

875–76. We concluded that the evidence was sufficient to find that the three unseized packages also contained a similar amount of contraband, and thus could be counted as relevant conduct of a common scheme. *Id.* at 876.

In a similar case, *United States v. Hollins*, 498 F.3d 622 (7th Cir. 2007), the Seventh Circuit permitted some amount of reasoned speculation and reasonable estimation by the sentencing court. In *Hollins*, the district court estimated drug quantity for one drug-smuggling trip using a closely analogous trip in which the same specific smuggling method had been used. *Id.* at 632. On appeal, the Seventh Circuit determined that it was not baseless speculation for the district court to look at the most closely analogous trip to approximate drug quantity. *Id.* at 631. Although *Hollins* is not binding in our circuit, we find it to be persuasive.

In this case, the Government demonstrated that Almedina received two packages from Colombia approximately four weeks apart, both packages were to go to Salgado, and both Almedina and Salgado were to be paid similarly for receiving each of the parcels. While it is plausible that the first package was a dry run and contained no contraband, since the fact pattern gives rise to two reasonable and different constructions, the district court's choice between them cannot be clearly erroneous. *See Izquierdo*, 448 F.3d at 1278. The present case is similar to *Curry* because Almedina received more than one package from the same

9

source, Colombia.  The authorities only seized one of the two packages and used the seized package to estimate the contents of the first package.  The district court's fair and reasonable estimation to infer drug quantity of the first package is permitted by the Sentencing Guidelines and thus was not clear error.

Additionally, Almedina argues that he was only convicted for possession and importation of heroin and that the first package could have contained a different type of contraband, such as cocaine.  This court has determined that a defendant need not know the type of drug involved in a drug offense to receive a base offense level based on that type of drug.  *United States v. Alvarez-Coria*, 447 F.3d 1340, 1344 (11th Cir. 2006) (per curiam); *see also*, U.S.S.G. § 1B1.3 cmt. n.2(a)(1) (2011) (noting that a defendant who transports a suitcase knowing that it contains a controlled substance is accountable for the substance in the suitcase regardless of the actual type or amount of that controlled substance).  Therefore, even if Almedina did not know the type or quantity of the drugs he received, the district court would not be precluded from attributing heroin to him for sentencing purposes.

**IV.**

For the foregoing reasons, we conclude that the district court did not abuse its discretion by sentencing Almedina to 97 months' imprisonment, and we therefore affirm his sentence.

**AFFIRMED.**

11