[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12506
Non-Argument Calendar
_____

D.C. Docket No. 1:07-cr-20211-PCH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ACOSTA THEONORE ANDRE,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 3, 2012)

Before BARKETT, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Acosta Theonore Andre appeals the district court's revocation of his

supervised release. First, he argues that the government failed to prove by a preponderance of the evidence that he violated Florida law, and, thus, the terms of his supervised release. Second, he contends that the district court improperly admitted hearsay evidence at his revocation hearing.

I.

We review the court's determination that a defendant violated the terms of his supervised release for an abuse of discretion. United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). We review a district court's fact findings for clear error. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

Under 18 U.S.C. § 3583(e), a district court may revoke a term of supervised release and impose a term of imprisonment upon a defendant who violates the terms of his supervised release if the government proves such a violation by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3); see also United States v. Cunningham, 607 F.3d 1264, 1268 (11th Cir. 2010).

Under the preponderance-of-the-evidence standard, the government must convince the court that "the existence of a fact is more probable than its nonexistence." United States v. Almedina, 686 F.3d 1312, 1315 (11th Cir. 2012) (quotation omitted).

In May 2011, a police officer in North Miami Beach pulled over a Range

2

Rover being driven by Lance Hall. Andre, who was driving an Audi in front of the Range Rover, also pulled over and approached the Range Rover. He left the scene after the officer told him to return to his car. Pursuant to a canine unit's alert for the presence of drugs, the officer searched the Range Rover.

The officer did not find any drugs but did find a zippered Louis Vuitton wallet in the car. The wallet contained Andre's drivers license, social security card, high school diploma, his doctor's business card, his probation officer's business card, and his girlfriend's business card. The wallet also contained two temporary Wal-Mart money cards.

The police traced the two Wal-Mart cards. The IRS had deposited tax refunds onto the cards, in accordance with tax returns purportedly filed in New York by "Josette B."[1] and "Kathleen W." The police found that Josette B. had moved out of the area with no forwarding address. However, Kathleen W. was interviewed and stated that she had not filed a tax return in over ten years, nor had she ever been to New York.

The cards' history also showed that they had been used at a local Louis Vuitton store to purchase, inter alia, a zippered wallet similar to the one found during the traffic stop.

---

[1] For privacy, we include only the first letter of their last names.

3

The district court concluded that Andre had filed fraudulent tax returns in others' names and then directed the IRS to deposit the refunds onto the Wal-Mart cards, which he used to buy Louis Vuitton items.[2]  These acts violated Florida statutes forbidding the fraudulent use of a credit card,[3] theft,[4] and the fraudulent

_____

[2]    When Andre was arrested in August 2011, he was found with another Louis Vuitton wallet that contained another temporary Wal-Mart card.  Like the others, this card had received funds from the IRS in accordance with a tax return, this time in the name of "Mary B."  Mary B. submitted a signed affidavit to the police saying that she did not know Andre, did not give him permission to possess her information nor to receive money from the IRS on her behalf, and that she had not filed a tax return in over ten years.

Because the government's petition for revocation included only the May 2011 offenses, the district court  considered the facts from August 2011 only as background surrounding the circumstances of Andre's arrest.

[3]

A person who, with intent to defraud the issuer or a person or organization providing money, goods, services, or anything else of value . . . uses, for the purpose of obtaining money, goods, services, or anything else of value, a credit card obtained or retained in violation of this part or a credit card which he or she knows is forged, or who obtains money, goods, services, or anything else of value by representing, without the consent of the cardholder, that he or she is the holder of a specified card or by representing that he or she is the holder of a card and such card has not in fact been issued violates this section.

Fla. Stat. § 817.61.

A credit card is defined as any "instrument or device . . . issued with or without fee by an issuer for the use of the cardholder in obtaining money, goods, services, or anything else of value on credit." Id. § 817.58(4).

[4]

A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:

(a) Deprive the other person of a right to the property or a benefit from the property.

(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

4

use of personal information.[5]  Because of these violations of state law, Andre had necessarily violated the terms of his supervised release.  He was sentenced to eighteen months.

We conclude that the district court did not abuse its discretion.  There is more than enough evidence to conclude that Andre was the person who filled out the tax returns and fraudulently used the Wal-Mart cards.  The cards were found inside a wallet that (a) had likely been purchased using one the Wal-Mart cards and (b) contained all of Andre's important personal documents.  The wallet was in a car that was later determined to be registered to Andre's girlfriend, and the car had been following Andre when the police pulled it over.  Andre had approached the Range Rover before the officer told him to go back to the Audi.  This shows that Andre likely had possession and knowledge of the cards prior to the traffic stop.  As for the source of the funds, Kathleen W. stated that she had not filed any tax returns in ten years and that she had never been to New York.

By using the Wal-Mart cards to make purchases and defraud Louis Vuitton, Andre fraudulently used the credit cards in violation of Florida law.  See Fla. Stat.

---

Fla. Stat. § 812.014(1).

[5]    "Any person who willfully and without authorization fraudulently uses, or possesses with intent to fraudulently use, personal identification information concerning an individual without first obtaining that individual's consent, commits the offense of fraudulent use of personal identification information . . . ."  Fla. Stat. § 817.568(2)(a).

§ 817.61.  As for the theft charge, Florida courts have held that the fraudulent use of a credit card will necessarily entail committing theft.  Wolf v. State, 679 So. 2d 351, 353 (Fla. Dist. Ct. App. 1996) ("[I]t is not possible to commit an offense under section 817.61 [forbidding the fraudulent use of a credit card] and not commit a theft.").  And by using Kathleen W.'s information to obtain the IRS refunds, Andre fraudulently used another person's identification without permission.  See Fla. Stat. § 817.568(2)(a).

The government did not need to produce evidence showing beyond a reasonable doubt that Andre committed these violations; there only needed to be a preponderance of evidence.  We find no error in the district court's conclusion that the government produced sufficient evidence of these violations.

II.

Andre next contends that the district court erred by considering hearsay at the revocation hearing.  The Supreme Court has held that the "full panoply of rights due a defendant" at trial do not apply in a supervised release revocation hearing.  Morrissey v. Brewer, 408 U.S. 471, 480, 92 S. Ct. 2593, 2600 (1972) (discussing a revocation of parole); see United States v. Frazier, 26 F.3d 110, 113-14 (11th Cir. 1994) (noting that "courts treat revocations the same whether they involve probation, parole, or supervised release").  The revocation procedure

6

should be flexible enough for the court "to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489, 92 S. Ct. at 2604.

Hearsay testimony may be admitted in a supervised release revocation hearing where the court concludes that the testimony is reliable and balances "the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." Frazier, 26 F.3d at 114. The district court's failure to make these findings will constitute harmful error where the defendant shows both "(1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as the basis for the sentence." United States v. Taylor, 931 F.2d 842, 847 (11th Cir. 1991) (quotations omitted).

There is no error with respect to the comments made by Lance Hall because they did not serve as the basis for Andre's sentence, nor has Andre shown that they are materially false or unreliable. See id. As for the comments made by Kathleen W., Andre similarly has not shown that the statements are materially false or unreliable. See id.[6]

---

[6] The district court did not rely on the affidavit signed by Mary B, which addressed the circumstances surrounding the Wal-Mart card found incident to Andre's arrest in August 2011. Those events were not the subject of the revocation hearing, and in any event, Andre failed to show that the affidavit would be materially false or unreliable.

**AFFIRMED.**

8