[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15445
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cr-00385-WSD-LTW-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE EDGARDO ARRIOZA-MELENDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 28, 2015)

Before MARCUS, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Jose Edgar Arrioza-Melendez appeals his 155-month sentence of imprisonment, imposed as a downward variance from his advisory guideline range

of 210 to 262 months, after pleading guilty to one count of conspiracy to possess with intent to distribute cocaine, methamphetamine, and heroin, in violation of 21 U.S.C. §§ 841(b) and 846.  On appeal, Arrioza-Melendez argues that the district court erred in holding him accountable for 22.88 kilograms of methamphetamine found in a vehicle abandoned by a co-conspirator because possession of those drugs was not within the scope of activity he agreed to undertake as part of the conspiracy.  After careful review, we affirm.

## I.

Drug Enforcement Administration ("DEA") agents had been investigating the activities of a drug-trafficking organization bringing drugs into the United States from Mexico.[1]  On February 16, 2013, DEA agents intercepted telephone calls indicating that Alier Pineda-Sanchez, the leader of the drug-trafficking organization in Atlanta, and another co-conspirator, Alejandro Gomez-Martinez, would be participating in a drug transaction that day.

Based on the intercepted information, DEA agents set up surveillance around Pineda-Sanchez's trailer (trailer 25-B) in a trailer park in Mableton, Georgia.  Two Jeeps, one silver and one green, left the residence and returned a few hours later.  At the request of the DEA, the Georgia State Patrol conducted a traffic stop of the silver Jeep, in which Pineda-Sanchez was a passenger, within

---

[1]    The following facts are taken from undisputed statements in the presentence investigation report and a DEA agent's testimony at the sentencing hearing.

view of trailer 25-B. Gomez-Martinez drove the green Jeep past the traffic stop and abandoned it near a vacant lot in the trailer park. He walked to trailer 25-B, briefly stopped inside, and then left in another vehicle.

Immediately after Gomez-Martinez left the area, DEA agents saw Arrioza-Melendez and another co-conspirator, Gerardo Milian Nagera, exit trailer 25-B and covertly observe the traffic stop. After a short while, they returned to trailer 25-B, retrieved two bags, and walked across the street to another trailer (trailer 8-V). Arrioza-Melendez abandoned one of the bags in the yard and then entered trailer 8-V. Agents retrieved the bag, which contained six kilograms of cocaine, sixty grams of heroin, and thirty-seven grams of methamphetamine. Arrioza-Melendez was found hiding in trailer 8-V.

After his arrest, Arrioza-Melendez, who had a key to trailer 25-B, gave DEA agents consent to search the trailer. Inside trailer 25-B, agents found signs of active methamphetamine processing, as well as quantities of methamphetamine and cocaine. The DEA agent who testified at the sentencing hearing explained that the trailer was being used to process powder methamphetamine into a crystalline form ("ice"). Meanwhile, DEA agents found twenty-three kilograms of methamphetamine in the green Jeep abandoned by Gomez-Martinez. Based on this evidence, DEA agents determined that the methamphetamine seized from the Jeep was destined for trailer 25-B to be processed by Arrioza-Melendez and others.

In the presentence investigation report ("PSR"), the probation officer calculated Arrioza-Melendez's base offense level at 38.  In arriving at level 38, the probation officer attributed to him the 22.88 kilograms of methamphetamine found in the green Jeep, in addition to the drugs in the bag and the trailer.  Arrioza-Melendez objected that the drugs in the Jeep should not be attributed to him because there was no evidence that he had any knowledge of or relationship to those drugs.  He did not object to being held accountable for the other drugs.

At Arrioza-Melendez's sentencing, the government put forth the testimony of a DEA agent who was involved in the surveillance and search of trailer 25-B. After hearing this testimony, as well as argument from the parties, the district court determined that the drugs in the Jeep were properly attributed to Arrioza-Melendez.  The court found that the drugs were possessed by co-conspirators, that the activity—taking the Jeeps to pick up a delivery of methamphetamine and bring it back to trailer 25-B—was within the scope of activity to which Arrioza-Melendez had agreed, and that Arrioza-Melendez knew that Pineda-Sanchez and Gomez-Martinez would engage in that activity.  In other words, the court found that the Jeep and the drugs found therein were reasonably foreseeable in connection with Arrioza-Melendez's level of participation in the conspiracy.  Thus, the court overruled Arrioza-Melendez's objection and then sentenced him to serve 155 months in prison.

## II.

We review the district court's determination of the drug quantity attributable to a defendant for clear error.[2]  *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).  A factual finding is clearly erroneous only if we are left with a definite and firm conviction that the sentencing court has made a mistake.  *Id.*  The government bears the burden of presenting reliable and specific evidence establishing drug quantity by a preponderance of the evidence.  *Id.*

## III.

To calculate the base offense level for a drug crime, the sentencing court must first determine the quantity of drugs attributable to the defendant.  *See* U.S.S.G. § 2D1.1.  In calculating drug quantity, "a member of a drug conspiracy is liable for his own acts *and the acts of others* in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity."  *United States v. Lee*, 68 F.3d 1267, 1274 (11th Cir. 1995) (quoting *United States v. Ismond,* 993 F.2d 1498, 1499 (11th Cir. 1993) (emphasis added)); *see also* U.S.S.G. § 1B1.3(a)(1)(B).  Thus, where the drug quantity

---

[2]  The government suggests that Arrioza-Melendez's claim of error is reviewed only for plain error because he did not renew his objection after the court pronounced sentence.  But our precedent does not require a party "to repeat objections made during the course of sentencing proceedings following the imposition of sentence," and an objection will be preserved so long as the "objection to be preserved and the grounds for the objection are clear to the sentencing court at the conclusion of the hearing."  *United States v. Maurice*, 69 F.3d 1553, 1557 (11th Cir. 1995). The only issue on appeal was squarely presented to, and resolved by, the district court. Therefore, it was preserved.

attributed to a defendant is based in part on co-conspirator conduct, we have directed district courts to make individualized findings establishing (1) a defendant's level of participation in the conspiracy, and (2) "the amount of drugs that are reasonably foreseeable in connection with that level of participation." *Lee*, 68 F.3d at 1274-75; *see* U.S.S.G. § 1B1.3 cmt. n.2.

Arrioza-Melendez challenges the sufficiency of the government's proof as to his level of participation in the conspiracy. He concedes that the government's evidence suggested that he "could have foreseen the arrival of the methamphetamine shipment at the trailer where he lived," but he argues that the government failed to show that possession of the methamphetamine in the green Jeep "fell within the scope of the wrongful activity to which Appellant had agreed." (Appellant's Br. at 10-11).

The district court did not clearly err in attributing the drugs found in the green Jeep to Arrioza-Melendez. Substantial evidence in the record supports the court's determination that the methamphetamine shipment in the green Jeep was reasonably foreseeable in connection with the scope of Arrioza-Melendez's participation in the conspiracy. Arrioza-Melendez was part of a drug-trafficking conspiracy along with Pineda-Sanchez and Gomez-Martinez. The conspiracy involved, among other things, converting powder methamphetamine into ice at trailer 25-B. On the day in question, DEA agents found signs of active

6

methamphetamine processing going on in the trailer.    Arrioza-Melendez was present at the trailer from before the time Pineda-Sanchez left to when he returned, and he left the trailer with drugs after observing the traffic stop involving Pineda-Sanchez.  Other evidence also suggested that Arrioza-Melendez lived at trailer 25-B along with Pineda-Sanchez.  Thus, it is reasonable to infer both that Arrioza-Melendez knew Pineda-Sanchez and Gomez-Martinez would be obtaining a substantial amount of methamphetamine and that his co-conspirators' conduct in obtaining the methamphetamine shipment was in furtherance of the drug-trafficking activity that Arrioza-Melendez agreed to undertake.  *See Lee*, 68 F.3d at 1274; U.S.S.G. § 1B1.3(a)(1)(B).  Indeed, the fact that Arrioza-Melendez concedes that he could have foreseen the methamphetamine shipment itself strongly suggests that he had agreed to that level of activity by participating in the conspiracy.

Arrioza-Melendez argues that the government's proof did not establish his level of involvement over time through surveillance of a longer duration.  Had the district court held him accountable for previous drug transactions, more proof of his role in the conspiracy over time may have been necessary.  *See* U.S.S.G. § 1B1.3 cmt. n.2 (explaining that "[a] defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct").  Here, however, the only drugs at issue were found on February 16.  Based on the evidence from that

7

day, as summarized above, we are not left with a definite and firm conviction that the district court made a mistake in attributing to Arrioza-Melendez the 22.88 kilograms of methamphetamine found in the green Jeep. *See Almedina*, 686 F.3d at 1315.

## IV.

In short, the district court did not clearly err in attributing to Arrioza-Melendez the drugs found in a vehicle driven by a co-conspirator. Accordingly, we affirm the sentence.

**AFFIRMED.**