[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10200
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00223-SCJ-JSA-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

XHOSA BUFFINGTON,
a.k.a. Sis,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 22, 2015)

Before HULL, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Xhosa Buffington appeals her 60-month mandatory minimum sentence, imposed after she pled guilty to conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(i), 841(b)(1)(C) and 841(b)(1)(D).  On appeal, Buffington argues that the Government failed to show she was responsible for at least 100 grams of heroin, triggering the mandatory minimum sentence.  Buffington also argues that the sentencing court improperly applied an enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises to distribute or manufacture controlled substances.  After review, we affirm.

As a preliminary matter, Buffington does not challenge the constitutionality of her sentence under *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013) and appears not to want a jury to decide whether she possessed a sufficient quantity of heroin to qualify for the mandatory minimum under 21 U.S.C. § 841(b)(1)(B)(i).  Buffington proceeded through two sentencing hearings and two appeals without raising an *Alleyne* objection.[1]  *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."); *United States v. Vanorden*, 414 F.3d

_____

[1] The plea colloquy in this case took place three weeks before *Alleyne* was decided.  The first sentencing hearing, which was the subject of Buffington's first appeal, took place two months after *Alleyne*, and the second sentencing hearing, which is the subject of this appeal, took place 18 months after *Alleyne*.  Buffington references *Alleyne* for the first time in this appeal but only to counter an anticipated argument by the Government that *Alleyne* converts Buffington's guilty plea as to all elements of the offense except the quantity of drugs into an unqualified guilty plea.  The Government does not so argue.

1321, 1323 (11th Cir. 2005) (applying the waiver/abandonment rule in the context of constitutional challenges to criminal procedure).  Because Buffington challenges the basis for the sentencing court's findings rather than the constitutionality of the sentencing process, this Court reviews the sentencing court's findings of fact for clear error.  *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005); *see also United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).

The sentencing court's finding that Buffington was responsible for more than 100 grams of heroin was not clearly erroneous.  Buffington admitted to the factual allegations in count three of the indictment, which included a statement that Buffington joined the underlying conspiracy "on or about March 1, 2012."  Although Buffington argued at the sentencing hearing that she did not join the conspiracy until May 2012, the sentencing court was entitled to credit Buffington's statement during her plea colloquy that the indictment was true with the exception of the heroin quantity.  *See United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (quotation omitted) ("Where a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous.").  At the sentencing hearing, Buffington offered as evidence multiple investigation reports, which identified several heroin transactions involving one or more of Buffington and her co-conspirators and commencing on or after March 1, 2012.  In total, the reports identify transactions involving an aggregate of 84.2

grams of heroin and at least another 55.9 grams of heroin that was found in Buffington's home.  Therefore, the district court could reasonably have concluded that Buffington was responsible for more than 100 grams of heroin.

The sentencing court's decision to apply a two-point enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance was also not clearly erroneous.  The evidence offered at sentencing showed that Buffington sold drugs from her home on at least one occasion and purchased drugs in her home on at least one occasion.  On the night of Buffington's arrest, as police approached Buffington's home, they encountered in Buffington's front yard two men, one of whom was armed.  When Buffington's home was searched, police found four scales and a large quantity of drugs, many of which were individually packaged in baggies.  Under these facts, the sentencing court could reasonably have concluded that one of Buffington's primary or principal uses for her home was the distribution of drugs.  *See* U.S.S.G. § 2D1.1, comment (n.17) ("Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises.").

**AFFIRMED.**

4