[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16762
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cr-00335-RDP-TFM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS RENALDO WARE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(October 3, 2017)

Before HULL, WILSON and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Carlos Ware appeals his sentence of 294 months of imprisonment following his pleas of guilty to one count of conspiring to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846; five counts of using a communication facility unlawfully, *id.* § 843(b); 18 U.S.C. § 2; and one count each of attempting to possess with intent to distribute five kilograms of cocaine, of possessing with intent to distribute 500 grams of cocaine, and of possessing with intent to distribute a detectable amount of cocaine, *id.*, 21 U.S.C. § 841(a)(1). Ware contests being held accountable for more than 50 kilograms of cocaine, *see* United States Sentencing Guidelines Manual § 2D1.1(c) (Nov. 2015); the addition of two points to his criminal history score for committing his offense while under a criminal justice sentence, *see id.* § 4A1.1(d); and the addition of four levels for his aggravating role, *see id.* § 3B1.1(a). Ware also argues that his sentence is substantively unreasonable. We affirm.

The district court did not clearly err in attributing to Ware more than 50 kilograms of cocaine. During Ware's sentencing hearing, Carlos Bogan testified that, from May 2014 to May 2015, he sold Ware "[t]wo to four kilo[gram]s" of cocaine every "two or three weeks"; in May 2015, he negotiated to sell Ware an additional nine kilograms of cocaine; and between May 2015 and August 2015, he supplied Ware with indeterminate quantities of cocaine on more than one occasion. Based on Bogan's testimony, excluding the nine kilograms and indeterminate transactions, Ware acquired an average of three kilograms of cocaine every three

2

weeks, which totaled 52 kilograms of cocaine. *See United States v. Almedina*, 686 F.3d 1312, 1315–16 (11th Cir. 2012). The district court made a "fair, accurate, and conservative estimate[]" of the quantity of cocaine for which Ware was responsible. *See United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998). The district court committed no error when it assigned Ware a base offense level of 34 based on his acquisition of more than 50 kilograms but less than 150 kilograms of cocaine. *See* U.S.S.G. § 2D1.1(c)(3).

The district court also did not clearly err by finding that Ware engaged in conduct relevant to his conspiracy offense while completing his sentence for conspiring to distribute cocaine and for carrying a firearm during a drug trafficking offense. *See id.* § 4A1.1(d). Under the guidelines, the district court could hold Ware responsible for all acts that were part of a "common scheme or plan as the offense of conviction." *See id.* § 1B1.3(a)(2). Offenses are part of a common scheme or plan when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Id.* § 1B1.3, cmt. n.5(B)(i). Ware purchased ecstasy and half of a kilogram of cocaine from Bogan in 2007 and 2008, when Ware was on supervised release. As the district court stated, Ware's conspiracy and earlier drug purchases involved Bogan as a "common accomplice"; they had a "common *modus operandi*" in that "Ware would go to Atlanta, acquire the narcotics, [and]

3

bring them back to Montgomery for distribution and resale"; and the offenses had "a common scheme" because "the purpose of all [the] transactions" was for the two men to "profit from drug transactions and the drugs coming in from Atlanta." Ware argues that the district court failed to account for the long interval between his transactions with Bogan, but the guidelines use temporal proximity as a factor in determining whether offenses are part of the same course of conduct, *id.* § 1B1.3 cmt. n.5(B)(ii), not in determining whether they constitute a common scheme or plan, *id.* § 1B1.3 cmt. n.5(B)(i). Because Ware's conduct occurred "while under a[] criminal justice sentence" and shared a common pattern and purpose with his "instant offense," he was subject to a two-point increase in his criminal history score. *See id.* § 4A1.1(d). Unlike in *United States v. Maxwell*, 34 F.3d 1006 (11th Cir. 1004), where a defendant's single sale of cocaine made one year before being arrested for participating in a scheme to distribute dilaudid did not count as relevant conduct, *id.* at 1011, the similarities in Ware's offenses established that they were substantially related.

Ample evidence supported the decision to increase Ware's offense level for his role as a leader of the conspiracy. *See id.* § 3B1.1(a). Ware did not dispute that the conspiracy involved more than five people. He had to assert control over only one other participant to constitute a leader, and Ware concedes that he exercised control over his brother, Twayne Ware, and two coconspirators, Alonzo Prevo and

4

Kyon Hall. *See id.* § 3B1.1 cmt. n.2 & 4. Ware managed the amount of drugs for the conspiracy by purchasing kilogram quantities of cocaine from Bogan in Atlanta, Georgia, and transporting the drugs to Montgomery, Alabama. Ware also exercised substantial control over the conspiracy by selecting who distributed and sold the cocaine and by arranging drug sales. Ware also directed his brother, Prevo, Hall, Wallace McCree, Shaffer Wright, and James Hawkins how much and to whom to sell cocaine; he monitored their transactions; he instructed Wright, McCree, and Hawkins to cook powder cocaine into cocaine base; and he ordered his brother to weigh, allocate, and deliver cocaine to stash houses and distributors in Montgomery. The district court did not clearly err in finding that Ware led the conspiracy.

The district court did not abuse its discretion by imposing a sentence within the advisory guidelines range. Ware controlled a conspiracy involving at least ten other participants who distributed large quantities of cocaine. Ware may have, in his words, had a "limited criminal history," but that was in large part due to his lengthy incarceration as a young adult for conspiring to traffic the same illegal substance while carrying a firearm. With an offense level of 37 and criminal history of III, Ware faced a sentencing range of 262 to 327 months. The district court reasonably determined that a "midrange sentence . . . of 294 months" was required to address Ware's "history and characteristics" and "the circumstances of

[his] offense," which involved leading a "very extensive drug conspiracy." *See* 18 U.S.C. § 3553(a); *United States v. Frazier*, 823 F.3d 1329, 1333 (11th Cir. 2016) ("The district court has discretion to determine how much weight to grant to a specific § 3553(a) factor."). Ware argues that the district court failed to consider his background and family responsibilities, but the district court found that information "cut both ways, in that [Ware] saw the strife, personal despair, and other ails of life [involving substance abuse and those who deal drugs,] and pursued it anyway." Ware's sentence, which is well below his statutory maximum penalty of life imprisonment, is reasonable. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

We **AFFIRM** Ware's sentence.