[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15009
Non-Argument Calendar
_____

D.C. Docket No. 9:13-cr-80078-DMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHRISTOPHER TAVORRIS WILKINS,
a.k.a. Christopher Tovarris Wilkins,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 27, 2018)

Before JULIE CARNES, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

Christopher Tavorris Wilkins appeals the sentence the district court imposed when it found that he violated the terms of his supervised release. After careful review, and for the reasons below, we affirm.

I.

Wilkins completed a term of incarceration in September 2017 and began a three year term of supervised release. The conditions of supervised release required that he refrain from any violation of the law and follow his probation officer's instructions. Later that same month, the probation office filed a petition to revoke Wilkins's supervised release, alleging that he had committed the offense of domestic battery by strangulation, in violation of Florida Statutes § 784.041(2)(a). That statute provides:

> A person commits domestic battery by strangulation if the person knowingly and intentionally . . . impedes the normal breathing or circulation of the blood . . . of a person with whom he or she is in a dating relationship, so as to create a risk of or cause great bodily harm by applying pressure on the throat or neck of the other person . . . .

Fla. Stat. § 784.041(2)(a). The probation office also alleged that Wilkins had failed to follow the orders of his probation officer.

The evidence adduced at Wilkins's revocation hearing was as follows. Wilkins and his girlfriend, Grace Hensley, got into a fight at her workplace after she confronted him with her suspicions that he was cheating on her. Police were called. Hensley told the officer responding to the scene that Wilkins had strangled

2

her and that at one point she had started to lose consciousness. The responding officer also observed redness and scratches on Hensley's neck. Later that night, Hensley posted on Facebook about the incident. Her post included two pictures showing bruising and marks on her neck.

The next day, Hensley called Wilkins's probation officer, Heath Schur, and told him that Wilkins had choked her. Hensley went to Schur's office, where he took pictures of the red marks and abrasions on her neck. Schur instructed Wilkins not to have any further contact with Hensley.

But while Wilkins was detained, he and Hensley talked on the phone. In one conversation, Wilkins encouraged her to sign an affidavit to bring to his revocation hearing so he could explain to the judge that "this [situation] was a misunderstanding" and that Hensley did not want to prosecute. Doc. 64-1 at 6.[1]

At the hearing, Hensley testified that the marks on her neck were "not from choking" but from "tossing around" and "fighting." Doc. 70 at 12. She denied that Wilkins had ever "grab[bed] or choke[d her] neck so as to impede [her] normal breathing or circulation." *Id.* at 20. When confronted with her prior statements to law enforcement, Hensley acknowledged having made them, but insisted that she had not been telling the truth immediately after the incident

---

[1] Unless otherwise indicated, all citations in the form "Doc. #" refer to the district court docket entries in this case.

because she was upset. Hensley admitted, however, that her "story changed" after her conversation with Wilkins. *Id.* at 13.

The district court found that Hensley's prior statements about being choked and strangled were reliable and that her testimony at the hearing was not credible. The court then determined that the government had proven, by a preponderance of the evidence, that Wilkins had violated his probation by (1) committing the offense of Florida domestic battery by strangulation, and (2) failing to follow the instructions of his probation officer by speaking to Hensley after his arrest.

Failure to follow the instructions of the probation officer constituted a Grade C violation under the United States Sentencing Guidelines, which corresponded to an 8 to 14 month sentence of imprisonment for Wilkins. *See* U.S.S.G. § 7B1.4(a). But domestic battery by strangulation constituted a Grade A violation, which carried a higher guideline range of 33 to 41 months.[2] *See id.* Because the offense that resulted in Wilkins's term of supervised release constituted a Class C felony,[3] however, his guideline range was limited by the statutory maximum of 24 months.

---

[2] A Grade A violation is the commission of a felony that constitutes, among other things, a crime of violence as defined in U.S.S.G. § 4B1.2(a). *See* U.S.S.G. § 7B1.1(a)(1), cmt. n.2. On appeal, Wilkins makes no argument that Florida Statutes § 784.041(2)(a) does not qualify as a crime of violence, and our binding precedent holds that it does. *See United States v. Dixon*, 874 F.3d 678, 682 (11th Cir. 2017) ("Florida's domestic-battery-by-strangulation statute qualifies as a 'crime of violence' under the elements clause . . . .").

[3] Wilkins was convicted one of count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g), which carries a maximum term of imprisonment of 10 years. *See* 18 U.S.C. § 924(a)(2). An offense with a maximum term of imprisonment of less than 25 years but 10 years or more is a Class C felony. 18 U.S.C. § 3559(a)(3).

4

*See* § 7B1.4(b)(1) ("Where the statutorily authorized maximum term of imprisonment that is imposable upon revocation is less than the minimum of the applicable range, the statutorily authorized maximum term shall be substituted for the applicable range."); 18 U.S.C. § 3583(e)(3) (explaining that a defendant whose supervised release is revoked may not be required to serve more than two years in prison if the offense that resulted in the term of supervised release is a Class C felony).  The district court sentenced him to 24 months' imprisonment.  This is Wilkins's appeal.

## II.

A district court may revoke a defendant's supervised release and sentence the defendant to serve all or part of the supervised release term in prison if the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release.  18 U.S.C. § 3583(e)(3).  We review the district court's revocation decision for an abuse of discretion, *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010), but we are bound by the district court's findings of fact unless they are clearly erroneous, *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).  When the evidence could give rise to two reasonable but different factual constructions, the district court's choice between the two constructions is not clearly erroneous.  *See United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).  Moreover, credibility

5

determinations are the province of the factfinder, and we "will not ordinarily review the factfinder's determination of credibility." *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994).

### III.

On appeal, Wilkins argues that his sentence is procedurally and substantively unreasonable because the district court erroneously concluded that he committed domestic battery by strangulation. Specifically, he argues that there was insufficient evidence to conclude that Wilkins "imped[ed] [Hensley's] normal breathing or circulation," Fla. Stat. § 784.041(2)(a), because Hensley testified at the revocation hearing that he did not impede her breathing or circulation.[4] Wilkins argues that this "erroneous finding" increased his guideline range from 8 to 14 months (for a Grade C violation) to 33 to 41 months (for a Grade A violation). Appellant's Br. at 13. We disagree.

The government presented sufficient evidence to support the district court's finding that Wilkins impeded Hensley's breathing or circulation. It introduced several of Hensley's prior statements in which she stated that Wilkins had strangled or choked her, and Wilkins did not dispute that Hensley told officers at the scene that he choked her to the point that she began to lose consciousness. The

---

[4] Although Wilkins is correct that Hensley testified he neither choked her nor impeded her breathing or circulation, the district court found Hensley's testimony during the hearing to be not credible, and we must defer to the district court's credibility determinations. *See Copeland*, 20 F.3d at 413.

government also admitted photographs of the marks on Hensley's neck, including two from her own Facebook post about the incident.

Although Wilkins argued to the district court that Hensley's prior statements were hearsay and thus could not be considered for their substance, Wilkins had an opportunity to confront Hensley, and the district court determined that the statements were reliable.  As such, the statements properly could be considered for their substance.  *See United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994) (holding that the Federal Rules of Evidence do not apply in supervised release revocation hearings, and explaining that a district court may rely on hearsay statements if it (1) balances the defendant's right to confront adverse witnesses against the government's grounds for denying confrontation and (2) determines that the statements were reliable).

Based on the testimony and evidence described above, including the pictures of Hensley's injuries and her prior statements that Wilkins had strangled or choked her, we conclude that the district court's finding that Wilkins had impeded Hensley's breathing or circulation was not clearly erroneous.  The district court thus did not err in determining that Wilkins committed the offense of Florida domestic battery by strangulation, a Grade A violation.[5]

---

[5] Wilkins does not appear to argue that his sentence was unreasonable for any reason other than the district court's conclusion that he committed domestic battery by strangulation. Nevertheless, we note that the district court correctly calculated his guideline range, considered

7

IV.

For the forgoing reasons, we affirm Wilkins's sentence.

**AFFIRMED.**

---

the parties' arguments, and selected a within-guidelines sentence based on Wilkins's criminal history and the nature of the violation.  Accordingly, the sentence was reasonable.