[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11319
_____

D.C. Docket No. 4:16-cr-00029-RH-CAS-1


UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

versus

ERVIN BELL, III, a.k.a. Norris Bell,
a.k.a. President,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 5, 2020)

Before MARTIN, ROSENBAUM, and TALLMAN,* Circuit Judges.

PER CURIAM:

Appellant Ervin Bell, III pled guilty to conspiracy to distribute and distribution of cocaine and cocaine base. *See* 21 U.S.C. §§ 841(a)(1), 846. At sentencing, a government witness testified that one of Bell's cooperating coconspirators, Stacy Young, had admitted to selling approximately 7.5 grams of cocaine base a day for Bell for over two years, equating to more than six kilograms of cocaine base over the course of the conspiracy. Based in part on that hearsay evidence, the district court assigned Bell a base offense level of 32 and sentenced him to 188 months in prison.

On appeal, Bell argues that the district court clearly erred when it relied on his coconspirator's hearsay statement and that the court's conclusion that he was responsible for at least 840 grams of cocaine base was speculative. With the benefit of oral argument and after careful review, we affirm.

I

In June 2014, the Drug Enforcement Administration ("DEA") and local law enforcement officers on a drug task force began investigating Bell, along with two other individuals, Steven Koonce and Stacy Young, for alleged drug trafficking

---

* The Honorable Richard C. Tallman, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

from a residence Bell maintained on Golf Terrace Drive in Tallahassee, Florida. As part of the investigation, the DEA conducted numerous controlled buys and worked with several confidential informants. In 2016, a federal grand jury returned a multi-count indictment against Bell, Koonce, and Young; all three ultimately pled guilty.

The circumstances surrounding Bell's offense conduct were set forth in a statement of facts accompanying his written plea agreement. As relevant here, information obtained by task force officers from a confidential informant as reported in the statement of facts implicated Young as selling four "circles" of crack cocaine every day for Bell. The statement of facts noted that "[a]n incredibly conservative estimate of one 'circle' a day"—at roughly seven grams of crack cocaine per circle—"for one year would equate[] to 2,555 grams of crack cocaine distributed by Young on behalf of Bell."

At his plea hearing, Bell disagreed with the reported drug amounts set forth in the statement of facts, but admitted to selling more than 28 grams of crack cocaine, and more than 500 grams of powder cocaine. He also admitted that the sales identified in the statement of facts were "consistent with what [he] was doing." Prior to sentencing, Bell also objected to the drug quantity estimate and base offense level set forth in his presentence investigation report ("PSI"). Rather than the base offense level of 34 recommended by the probation office, Bell

3

claimed that he was responsible for only 4,456.29 grams (4.46 kilograms) of powder cocaine and 178.46 grams of crack cocaine, which, for sentencing purposes, has a marijuana equivalent of 1,528.64 kilograms, resulting in a base offense level of 30. However, Bell did not object to the statement in the PSI that he had known Young for a number of years and trusted him to "run things" while Bell was working at his "legit job."

Bell reiterated his disagreement with the government's proposed drug quantity at his sentencing hearing. In response, the government called Leon County Sheriff's Deputy George Stinson to testify regarding the drug quantities reported by various confidential informants as well as cooperating codefendant Young. Deputy Stinson stated that Young said that beginning in early 2014, he sold "about a circle a day of crack cocaine and varying amounts of powder cocaine" for Bell. According to Young, this continued until May of 2016. Although a circle of crack cocaine per day for over two years would total more than six kilograms of cocaine base, the government explained during its examination of Deputy Stinson that it was conservatively focusing on only one year of Young's sales, for a total of 2,550 grams.[1] Bell cross-examined Deputy Stinson but did not testify or call any witnesses.

---

[1] Although the statement of facts described Young's cocaine base sales as totaling 2,555 grams, this minor discrepancy is immaterial because either quantity is more than the 840 grams for which the district court ultimately found Bell responsible.

The court found that Deputy Stinson accurately testified as to what he was told by the confidential informants and by Young, but noted that those sources did not themselves testify and that "[i]ndividuals sometimes say things to the agent that when they get in the courtroom with the bright lights and take the oath and everybody's here and the defendant's present, they don't say." Nevertheless, the court explained that it had to make the best determination of drug quantity it could "based on the imprecise information provided, to the extent that it's sufficiently reliable." The court explicitly discounted as insufficiently reliable some of what Deputy Stinson conveyed about the drug weights reported by one of the confidential informants other than Young, and eventually settled on at least 840 grams, but not more than 2.8 kilograms, of crack cocaine, resulting in a base offense level of 32. Combined with the appropriate enhancements and reductions suggested in the PSI, Bell's total offense level was 34 and the court imposed a low-end Guidelines sentence of 188 months' imprisonment. This appeal eventually followed.

## II

A district court's factual determination of the quantity of drugs attributable to a defendant is reviewed for clear error. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). We will not find clear error unless we are left with a

"definite and firm conviction that a mistake has been committed."  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted).

III

In a case such as this one, where not all the drugs trafficked ultimately were seized, the Sentencing Guidelines require the court to "approximate the quantity of the controlled substance."  U.S.S.G § 2D1.1 cmt. n.5.  The court's approximation "'may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, [but it] cannot be based on calculations of drug quantities that are merely speculative.'"  *United States v. Almedina*, 686 F.3d 1312, 1316 (11th Cir. 2012) (quoting *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998)).  When a defendant challenges the factual basis of his sentence, the government bears the burden of establishing the disputed facts by a preponderance of the evidence.  *See United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997).

Regarding hearsay evidence, such as Deputy Stinson's recitation of Young's hearsay statement regarding the quantity of crack cocaine he sold for Bell, we have explained that such evidence may be considered at sentencing if it is reliable, *see United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009), and provided the defendant has the "opportunity to rebut the evidence or generally cast doubt upon its reliability," *United States v. Castellanos*, 904 F.3d 1490, 1496 (11th Cir. 1990).

6

*See also* U.S.S.G. § 6A1.3 (permitting a court to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy"). The reliability of such evidence "must be determined on a case by case basis." *United States v. Lee*, 68 F.3d 1267, 1275 (11th Cir. 1995). "While it may be advisable and in some instances necessary for a district court to make distinct findings regarding the reliability of hearsay statements used at sentencing, the absence of such findings does not necessarily require reversal or remand where the reliability of the statements is apparent from the record." *United States v. Gordon*, 231 F.3d 750, 761 (11th Cir. 2000).

We cannot say here that the district court clearly erred in finding Bell responsible for at least 840 grams of cocaine base. *See Rothenberg*, 610 F.3d at 624 (finding of clear error requires a definite and firm conviction that a mistake has been committed). Much more than 840 grams is encompassed by Young's hearsay statement alone, the reliability of which is supported by other evidence in the record. First, we note that Young pled guilty and was sentenced by the same district judge who sentenced Bell so the statements attributed to Young are clearly statements against his penal interest and carry greater reliability than statements attributed to confidential informants who are not charged and never appear before the court in the matter. Next, Bell himself admitted that the sales identified in the

statement of facts (and which underlie the distribution counts to which he pled guilty), including Young's sales on his behalf, were "consistent with what [he] was doing." Bell also admitted to a lengthy relationship with Young and to trusting him to "run things" at the Golf Terrace Drive drug house. Finally, Young's reported quantities matched what Deputy Stinson testified law enforcement were able to obtain during controlled buys, and Young's identification of Bell's suppliers and customers was corroborated by what other confidential informants and law enforcement observed during the course of the investigation including the execution of a search warrant on the drug house from which Bell and his coconspirators conducted their drug business.

Bell was the admitted head of this multi-year drug trafficking operation, maintained the residence on Golf Terrace Drive where many of the drugs were sold, and was himself present during multiple controlled purchases of cocaine. On this record, we are satisfied that the district court's drug quantity calculation was not "merely speculative," but rather was "based on fair, accurate, and conservative estimates of the quantity of drugs attributable" to Bell based on the evidence supporting the conspiracy charged. *Almedina*, 686 F.3d at 1316.

\*    \*    \*

The calculation and attribution of drug quantities in cases where not all of the drugs trafficked are seized is necessarily a difficult task. Here, the district

court undertook that task with great care, thoroughly reviewing all of the evidence before it settled on a conservative estimate of the drug quantity for which Bell could fairly be held responsible. We discern no clear error in the district court's findings.

**AFFIRMED.**