[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13340

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROBERTO MURILLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20436-PAS-2

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Roberto Murillo appeals his 105-month total prison sentence for one count of conspiracy to commit healthcare fraud and wire fraud and seven counts of healthcare fraud.  On appeal, Murillo contends that the district court erred in determining that his fraud offenses involved a loss amount of approximately $16.6 million for purposes of a 20-level enhancement under the United States Sentencing Guidelines.  *See* U.S.S.G. § 2B1.1(b)(1)(K).  Because the district court did not clearly err, we affirm Murillo's sentence.

We review the district court's determination of the amount of loss attributable to a defendant for clear error.  *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015).  "For a factual finding to be clearly erroneous, we must be left with a definite and firm conviction that the court made a mistake."  *United States v. Chalker*, 966 F.3d 1177, 1194 (11th Cir. 2020) (quotation marks omitted).  The district court "need only make a reasonable estimate of the loss," which is entitled to deference because the court is in "a unique position to assess the evidence and estimate the loss based upon that evidence."  U.S.S.G. § 2B1.1, cmt. n.3(C).  A loss finding based on a reasonable construction of the evidence is not clearly erroneous.  *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).

The guideline for fraud offenses, U.S.S.G. § 2B1.1, calls for an increase in the offense level of up to 30 levels based on the extent of loss. *See* U.S.S.G. § 2B1.1(b)(1). As relevant here, a 20-level increase applies if the offense involved a loss between $9.5 million and $25 million. *Id.* § 2B1.1(b)(1)(K).

"Loss" for purposes of this guideline is the greater of "actual" loss or "intended" loss. *Id.* § 2B1.1, cmt. n.3(A). Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense," *id.*, cmt. n.3(A)(i)—actual monetary loss, in other words. Intended loss is "pecuniary harm that the defendant purposely sought to inflict," including "intended pecuniary harm that would have been impossible or unlikely to occur. (*e.g.*, as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." *Id.*, cmt. n.3(A)(ii).

Here, the district court did not clearly err in determining the loss amount for purposes of its guideline-range calculations. The trial evidence established that Murillo conspired with Pedro Ariel Cuni, an office manager of a medical clinic, to submit false and fraudulent claims to United Health Care Services, Inc. ("United"), which administered a self-funded healthcare benefits plan for AT&T. Murillo, who worked for AT&T, recruited other AT&T employees insured by the plan so their information could be used to submit false and fraudulent claims for therapy services and other treatments they did not want, need, or receive at the clinic. During the conspiracy, Murillo and Cuni submitted or caused to be

submitted $16,625,118 in false or fraudulent claims, for which United paid the clinic $2,346,201.

The parties agree that the total amount fraudulently billed to United—$16,625,118—is *prima facie* evidence of the intended loss, and we assume without deciding they are correct. *Cf.* U.S.S.G. § 2B1.1, cmt. n.3(F)(viii) (stating, with regard to government health care programs, that "the aggregate dollar amount of fraudulent bills submitted . . . shall constitute prima facie evidence of the amount of the intended loss"); *see also United States v. Melgen*, 967 F.3d 1250, 1265–66 (11th Cir. 2020) (applying this rule in a Medicare fraud case). In other words, that evidence is "sufficient to establish the amount of the intended loss, if not rebutted." U.S.S.G. § 2B1.1, cmt. n.3(F)(viii).

As rebuttal evidence, Murillo points to Cuni's trial testimony that the conspiracy recruited AT&T employees because AT&T "would pay around $25,000 per patient." This testimony, in Murillo's view, establishes that the "true intended loss was $25,000 per patient" and that, because he recruited 50 patients for Cuni, the total intended loss was "far less" than $16.6 million.

The district court did not err in concluding that Murillo failed to rebut the prima facie evidence of loss. Cuni's comments about the conspiracy's expected returns on a per patient basis do not rebut the government's evidence of intended loss. As the government states, "while a defendant may not expect to get everything that he fraudulently asks for, that does not mean that he does not intend to take as much as he can get." *See United States v.*

*Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) ("[W]hen a sentencing court is determining the proper punishment for a defendant's fraud, the court uses the reasonable mathematical limit of his scheme, rather than his concrete result."); *United States v. Wai-Keung*, 115 F.3d 874, 877 (11th Cir. 1997) ("It is not required that an intended loss be realistically possible."). Cuni's testimony does not show that he "intended for [the clinic] to receive only the amount paid by [United], rather than the amounts billed." *United States v. Moran*, 778 F.3d 942, 975 (11th Cir. 2015). And Murillo did not offer any other evidence that the conspiracy intended to cause some lesser loss amount.

On this record, we are not left with a definite and firm conviction that the district court made a mistake in basing its loss finding on the total amount fraudulently billed to United. *See Chalker*, 966 F.3d at 1194; *cf.* U.S.S.G. § 2B1.1, cmt. n.3(F)(viii). The court's finding was reasonable and supported by the record. *See Almedina*, 686 F.3d at 1315. Accordingly, we affirm Murillo's sentence.

**AFFIRMED.**